# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2013

Lyle W. Cayce
Clerk

No. 12-20733
Summary Calendar

MICHAEL A. GARDOCKI,

Plaintiff-Appellant,

v.

JP MORGAN CHASE BANK, N.A.; FEDERAL NATIONAL MORTGAGE ASSOCIATION, also known as Fannie Mae,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
U.S.D.C. No. 4:12-cv-2254

Before STEWART, Chief Judge, and OWEN and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant, Michael A. Gardocki challenges the district court's grant of a motion to dismiss filed by Defendants-Appellees, JPMorgan Chase Bank, N.A. ("JPMC") and the Federal National Mortgage Association ("Fannie

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20733

Mae"). For the reasons provided herein, we REVERSE the final judgment of the district court and REMAND for proceedings consistent with this opinion.[1]

## I. BACKGROUND

### A. The Mortgage

On October 13, 2000, Gardocki purchased the property at 1703 Riverbend Crossing in Sugar Land, Texas (the "Property"), using the proceeds of a deed of trust mortgage (the "Mortgage") held by Suntrust Mortgage, Inc. ("Suntrust"). Suntrust assigned the Mortgage to Chase Mortgage Company ("CMC") on June 1, 2001.

### B. The Mergers

On October 1, 2003, CMC merged into Chase Manhattan Mortgage Corporation ("CMMC"). CMMC merged into Chase Home Finance, LLC ("CHF") on January 1, 2005. Finally, on May 1, 2011, CHF merged into JPMC. At the time of the foreclosure at issue in this case, JPMC was both the mortgagee and the servicer of the Mortgage.[2]

### C. Damage to the Property by Hurricane Ike

Gardocki asserts that the Property sustained $26,579.70 in damage from Hurricane Ike, and that he repaired the Property at his own expense. The homeowner's insurance carrier, Nationwide Insurance, issued a reimbursement

---

[1] The district court did not formally enter a final judgment in CM/ECF. That said, its October 2, 2012 order granting Defendants-Appellees' motion to dismiss stated that it is "ORDERED, ADJUDGED, and DECREED that all claims asserted by plaintiff . . . are hereby dismissed with prejudice."

[2] Gardocki asserts that JPMC was not a proper mortgage servicer under Texas law because JPMC did not provide him with notice that it had assumed the role of servicer upon its acquisition of CHF. The Court need not address the issue of JPMC's provision of notice since, in his briefs, Gardocki concedes that he made multiple visits to local JPMC retail branches to make Mortgage-related inquiries. Thus, Gardocki clearly knew that JMPC had assumed the role of Mortgage servicer.

check for this amount, which required the endorsement of both Gardocki and the holder of the Mortgage.

Under the terms of the Mortgage, the holder is entitled to withhold its endorsement of an insurer's reimbursement check pending its inspection of the Property to ensure that the repairs have actually been made and that any repair contractors have been paid. The deed of trust provides that "such inspection shall be undertaken promptly."

Gardocki asserts that JPMC never undertook its inspection or endorsed the reimbursement check, despite his repeated requests that it do so. Gardocki further asserts that JPMC's failure to endorse the reimbursement check left him with insufficient funds to meet his monthly payment obligations under the Mortgage.

## D. The Foreclosure Sale

Gardocki defaulted on his monthly payment obligations, eventually prompting JPMC to refer the mortgage to its foreclosure counsel. By certified mailing, in February 2012, foreclosure counsel advised Gardocki that he was in default, and of the payment necessary to cure the default. In the same certified mailing, foreclosure counsel further provided Gardocki with notice of acceleration and notice of sale.

Gardocki asserts that the certified mailing was sent to an unmonitored mailing address, rather than to a P.O. Box to which JPMC and its predecessors had sent all Mortgage-related correspondence since late 2000 or early 2001. It is not clear when, if ever, Gardocki received the certified mailing. That said, Gardocki concedes that he received multiples notices of default, sent to the P.O. Box address, prior to JPMC's referral of the Mortgage to its foreclosure counsel.

JPMC foreclosed on the Property. JPMC appointed a substitute trustee, who sold the Property back to JPMC at auction on April 3, 2012. The Property

No. 12-20733

sold for $146,350.42, and was valued at $206,290.00. Subsequently, JPMC assigned the Property to Fannie Mae, which initiated eviction proceedings against Gardocki.

## II. PROCEDURAL HISTORY

In his first amended complaint—the live complaint for purposes of this appeal—Gardocki alleges breaches of both the mortgage contract and Texas law. He seeks a declaratory judgment nullifying the foreclosure sale and instructing JPMC to endorse the reimbursement check.

Specifically, Gardocki asserts (i) that he was not in default;[3] (ii) that JPMC was not a proper party to enforce the Mortgage or appoint a substitute trustee; (iii) that foreclosure counsel failed to provide him with notice of acceleration and sale; (iv) that the substitute trustee sold the property back to JPMC at a grossly inadequate price; (v) that JPMC failed to endorse the check or conduct its inspection in a reasonable period of time; (vi) that JPMC was not a proper mortgage servicer under Texas law; and (vii) that JPMC violated Texas's "fraudulent lien" statute, *see* Tex. Civ. Prac. & Rems. Code § 12.002, by appointing the substitute trustee.

Defendant-Appellees moved to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). On October 2, 2012, the district court granted Defendants-Appellees' motion in a one-paragraph order that provided no written findings of fact or conclusions of law, and referenced no orally-provided bases for the court's decision. Gardocki timely appealed.

---

[3] The Court notes that this assertion is at odds with Gardocki's assertion that JPMC's failure to endorse the reimbursement check left him with insufficient funds to meet his monthly payment obligations under the Mortgage.

4

No. 12-20733

## III. STANDARD OF REVIEW

We review de novo a district court's grant of an FRCP 12(b)(6) motion to dismiss. *In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007).

A plaintiff must provide "'a short and plain statement of the claim showing that [he] is entitled to relief,' in order to 'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Accordingly, the plaintiff must provide more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

### A.    Parties' Arguments

As a result of the district court's failure to provide any written findings of fact or conclusions of law, or any oral bases for its decision, Gardocki on appeal largely reiterates the allegations made in his first amended complaint.

JPMC responds that Gardocki's various allegations would not entitle him to his requested relief as a matter of law. Namely, JPMC submits (i) that Gardocki had failed to meet his monthly payment obligations even before he first approached JPMC to endorse the reimbursement check; (ii) that, as the successor by merger to CMC and its progeny, JPMC was a proper party to enforce the Mortgage and appoint a substitute trustee; (iii) that, at a minimum,

5

Gardocki received constructive notice of acceleration and sale; (iv) that, because the sale price was for greater than 50% of the Property's market value, it was per se adequate under Texas law; (v) that Gardocki did not request for JPMC to inspect the Property but, instead, simply demanded of low-level retail branch employees that JPMC endorse the reimbursement check; (vi) that JPMC adequately satisfied Texas's notice requirement for assuming the role of Mortgage servicer, as evidenced by Gardocki's multiple visits to JPMC retail branches; and (vii) that Texas's "fraudulent lien" statute does not apply to the conduct Gardocki alleges (namely, JPMC's appointment of the substitute trustee).

## B.    Analysis

Here, at a minimum, issues (i) and (v) involve disputed characterizations of fact.  It is unclear from the record available on appeal whether the full $26,579.70 related to out-of-pocket costs expended by Gardocki to repair the Property after Hurricane Ike.  It also is unclear whether Gardocki followed proper procedures for notifying JPMC of its need to endorse the reimbursement check.  In the event JPMC had adequate notice, which is uncertain, it also is unclear whether JPMC waited an unreasonable period of time to conduct its inspection.  Finally, it is unclear whether there was a sufficient causal link between JPMC's failure to endorse the reimbursement check and Gardocki's failure to meet his monthly payment obligations.  This last issue is especially complicated by the lack of a clear timeline as to when Gardocki first failed to meet his monthly payment obligations relative to his first expenditures on purported Hurricane Ike-related repairs.

Were Gardocki to prove the facts alleged in his complaint, it is plausible the district court could find that JPMC breached the Mortgage contract by failing to endorse the reimbursement check in a timely manner, thereby

causing Gardocki to fail to meet his monthly payment obligations. But for this failure, foreclosure would have been improper. It is equally plausible that Gardocki will fail to meet his burden to prove the above facts, and that JPMC might successfully move for summary judgment.

At least on the particular facts of this case, where the district court provided us <u>no</u> indication of its reasoning, we conclude that Gardocki's first amended complaint "plausibly [gave] rise to an entitlement to relief," allowing us "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 556).

## V. CONCLUSION

For the foregoing reasons, we REVERSE the final judgment of the district court and REMAND for proceedings consistent with this opinion.